EASTERN DIS.
*April*, 1834.

BEAL
*vs.*
M'KIERNAN.

BEAL *vs.* M'KIERNAN.

APPEAL FROM THE COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

The Louisiana Code has preserved all the principles, which before its promulgation prevented a commission merchant, who had an order to purchase cotton, to apply his own cotton thereto.

A. directs B. to buy and ship cotton; B. has cotton of his own and determines to ship it. This creates no agreement, obligation, contract, or sale.

The agent, like the principal, may buy from any person, not prohibited by law, but neither can buy from himself.

A. has an order from B., to purchase cotton, and from C. to sell his crop: he determines on selling C's cotton to B. The price has been determined by one person only; there is not that concurrence of two minds, *aggregatio mentium*, which is essential to the formation of the contract.

EASTERN DIS. Brokers are not employed like commission merchants, to buy or sell, or like
*April*, 1834.          bankers to lend or place money, but simply to procure sales or loans.
BEAL          They negotiate bargains, carry communications to and from the parties
*vs.*          respectively, and they or their agents conclude the bargains.
M'KIERNAN.

The commission merchant who undertakes to fill an order, with cotton which he has to sell, assumes inconsistent duties.

The plaintiff claimed of the defendant the sum of three thousand eight hundred and nine dollars and eighty-five cents, the amount of loss on a shipment of cotton.

The plaintiff alleges that on the 6th June, 1831, B. M'Kiernan, acting for himself and John M'Kinley, doing business in commerce, as partners, requested the plaintiff by writing, to purchase for them five hundred bales of cotton, of such quality, and at such prices as he might think best for their interest, and to ship the same to Liverpool; the plaintiff being requested and required to advance the purchase money, and M'Kiernan and M'Kinley promising in case of loss on the adventure, to repay to the petitioner on demand, but in case of a profit, then to be authorized to draw on the latter at sight, for the same.

That at the date of the instructions M'Kiernan and M'Kinlay had in store with the plaintiff, sixty-two bales of cotton, which by said instructions he was authorised to sell, or ship to Liverpool, as he should think proper.

That he complied with said instructions, in purchasing four hundred and ninety-nine bales of cotton; that he thought it best for the interest of M'Kiernan and M'Kinlay, that the sixty-two bales stored should be shipped, and accordingly the whole were shipped to Liverpool, and there sold at a loss.

The defendant pleaded the general denial. He admitted that he gave an order in writing to the plaintiff, to purchase and ship cotton, but averred that the same was afterwards revoked, and a verbal order given, limiting the price of the cotton, and fixing the quality to be purchased. He averred that in the written order a limitation was originally fixed for the price, but at the request of the plaintiff, the same was, on

making a copy thereof, omitted, and the plaintiff agreed to
make the purchase under a subsequent verbal order, which revoked the written one.

That the plaintiff did not comply with his instructions, but violated them, with a view of benefiting himself at the expense of the defendant; and instead of purchasing cottons, really shipped his own, pretending he had purchased for defendant. That the weights of the said cotton were not correct, but the same were charged in New-Orleans for more than the real weight, and the weights in Liverpool were less than those charged in New-Orleans.

The case was submitted to a special jury.

*Banks* testified that acting as a broker, he made the selection of the cotton, at the instance of Beal. Witness went through Beal's whole stock, he conscientiously fixed the price of this cotton himself, at the same price that he was buying from Beal, for other persons, and in which he was himself interested; he considered the price as low as possible; he could not have executed the order at better terms; the market was swept at that time of all the cotton of that kind that was offered at that price. Witness went at all the usual places, and he advised Beal to sell his cotton. Others offered their cotton at a higher price, and none at a lower one. Beal had not restricted witness to his own cotton. Witness knew he was buying the cotton for M'Kiernan and M'Kinlay, Mr. Beal said so to him when he gave him the order. Witness did not know to whom the cotton belonged; does not recollect who weighed the cotton, it; was one of the public weighers.

Witness had no authority from M'Kiernan and M'Kinlay to buy the cotton, all that he knew about it was from Beal. Beal paid the brokerage to witness. Witness never knew those cottons to be sold at a lower price in New-Orleans; the market was then much depressed. Witness never advised M'Kinlay and M'Kiernan that he had bought this cotton on their account.

*Dunn* testified that he was in the counting house of

Beal about the latter end of December, 1831, when a conversation took place between plaintiff and defendant, about the sale of this cotton in Liverpool. M'Kiernan said to Beal. "Well Beal, what will you take to let me off?" "Nothing, answered Beal, the cotton was shipped on your account, if there be any profit, you shall have it, but if any loss occurs, you must stand it." No returns of sales had been received, but letters of advice had been, showing the rates at which cottons were then sold.

In April, 1832, after M'Kiernan had had in his possession for several days, the account current of the sales, he stated that as regarded the calculations, he took them for correct, and complained only of the extravagance of the charges in Liverpool.

*Yeatman,* a witness for defendant, testified that the plaintiff admitted in his presence, that the cotton, was cotton which he had the selling of, and over which he had the whole control, but witness did not understand Beal to mention that it was his individual property. There was no precise expression made use of, but witness, from the conversation, understood that it was cotton consigned to him for sale.

The counsel for the defendant requested the judge to charge the jury:

First, That no co-partners, except commercial co-partners, are bound in *solido* for the debts of the co-partnership contracted in this state.

Second, That an agreement to purchase a single lot of cotton by two individuals, for resale, will not of itself constitute a commercial partnership.

Third, That if the jury believe from the evidence, that the defendant M'Kiernan, was not in commercial co-partnership with M'Kinlay, then the defendant is liable for one-half only of the debt fixed on.

Fourth, That in joint obligations, by all except in commercial co-partnerships, all the obligors must be sued, or the plaintiff must fail.

5, That a commission merchant, under an order to purchase cotton, cannot fill that order by applying his own cotton to the purpose of the order, nor the cotton of others consigned to him to sell, neither by himself or through the intervention of a broker, and therefore, if the jury believe that the four hundred and ninety-nine bales of cotton, applied to the order to purchase in this case, either belonged to Wm. Beal himself, or had been consigned to him, and was then in his hands to sell on commission, and that Banks and Kincaid had no authority from the defendant to buy, except what they derived from the plaintiff, they should find for the defendant.

Which charge the court refused to give, but charged the jury as follows :

First, The connexion between M'Kiernan and M'Kinlay, comes within the definition of commercial partnerships, for it was formed for the purchase of a personal property, to wit: *cotton*, and the sale thereof. *Civil Code*, 2795, 2806. It was an association in participation or commercial speculation for joint account, which comes within the definition of commercial partnerships, and were probably those which the authors of our Code called special, and which were to be regulated by the contemplated Code of Commerce, which has never been enacted. *Favadr de Langlade Societé, vol.* 5, 241, 242. In commercial partnerships, by our laws, solidarity exists.

Second, By our law, as it now stands, all persons may buy or sell, except those interdicted by law. 2420 *et seq.* No law, in this state, interdicts a person who, as agent of one, is charged to sell property, to purchase it for another person. On the contrary the law contemplates a double agency, *Civil Code*, 2985, 2986.

Third, Even had not Beal the right to purchase for M'Kiernan the cotton which he was charged to sell for others, the jury may inquire whether there was at any time a ratification of the transaction by M'Kiernan.

To which charge so delivered, and also to the refusal to give the charge requested by the defendant's counsel, the defendant excepted.

EASTERN DIS.
*April*, 1834.

BEAL
*vs.*
M'KIERNAN.

The plaintiff had a verdict and judgment, and the defendant appealed.

*Strawbridge*, for plaintiff and appellee.

*M'Caleb* and *Gray*, on the same side, made the following points.

1. Beal might purchase from himself for another. He was not governed by the law of agents, trustees, curaors, &c., who are prevented by law from purchasing for themselves, property confided to their care.

2. There is this difference between the cases reported, and Beal's, that in the former the agent or trustee has purchased *from* himself *for* himself, in the latter Beal purchased from himself for another. *Curia Philippica Factores, N.* 16. *Pothier Vente, no.* 13, *D.* 18, 1, 34. 7 *Contrat Empt.* *Campbell* vs. *Walker,* 5 *Vesey,* 678. 1 *John. Rep.* 394. 4 *Ves.* 411. 6 *Ves.* 624. 4 *N. S.* 267. 2 *Miller,* 69. *Scott* vs. *Calirt.* The reason of the law prohibiting purchases by persons acting in a confidential character, shows the entire difference between this case and those decided upon the principle alluded to.

3. If then the cases reported are different from the present, is the principle of the former so strictly applicable as renders it incumbent upon the court to extend it to this? Clearly not. The reasons are: First, The temptations and opportunities of fraud. Second, The incompatibility between the interests of seller and purchaser. Third, The advantages which the confidential situation gives. *Curia Philippica Factores, no.* 16. *Pothier de Vente, no.* 13, *D.* 26, 8, 5, 3 *de auc. et cons. pet.* 3 *Vesey Rep.* 759, *Whichcote* vs. *Lawrence.* *Campbell* vs. *Walker,* 6 *Vesey,* 678. *Fox* vs. *Mackrett,* 2 *Br. Ch. Rep.* 400. 4 *Bro. Parl. Ca.* 258. *Greer* vs. *Walker.* 1 *John. Chanc. Rep.* 27.

4. Is there any temptation to fraud here? He is a disinterested agent for both parties, allowed by law and made in many cases, *art.* 2002. *Cod. de Nap. Pothier Mandat n.*

82. *Liver on Agen. vol.* 1, 41. *Marshall on Insurance,* 498. *Abbott on Shipping, Auctioneer, captains* and *brokers,* are the agents for both parties.

5. No incompatibility exists, because he is disinterested and acts conscientiously for both parties; acts through brokers.

6. By the *Civil Code,* all persons may buy except those interdicted by law, 2420. See *Code Civil de France* 60. *Siery, Trait de Vente art.* 1596, *p.* 571, for the difference between the two, evidently designed.

7. But such purchases are not *ipso jure* void, but only *voidable* at the election of the party whose property is purchased, 5 *vol.* 678. 80 *Pothier du Vente, no.* 13, 11. 3 *Ves.* 750. *Liver on Agency, vol.* 1, 21. The consignor might object, not M'Kiernan, unless he proves *fraud.*

8. And if ratified, either expressly or tacitly, they become perfectly valid. *Campbell* vs. *Walker,* 5 *Ves.* 680. *Pothier de Vente, no.* 14. *Toullier tom.* 8, 701, 19, 517. *C. Code,* 1805. *Paley's Law of Principal and Agent,* 143.

9. One transaction, joint purchase and sale, is sufficient. *Kent's Com. vol.* 3, *p.* 3, 4, 5, 13. 8 *Serg. and Rawle* 103. 12 *East.* 421, *cited in Kent. p.* 13. A participation in profit or loss, or holding out to the world as partners, so as to induce others, &c., renders a person responsible. *Kent vol.* 3, *p.* 4. 16 *East.* 173. 1 *Wash. C. C. R.* 491. *Hourquebies* vs. *Gerard's adm'r.,* 1 *Wash. C. C. R.* 164, 112. *Montague on Partnership, vol.* 1, *p.* 4, 27, 33, 57. *Gow on Partnership,* 12, 15. 239. *Civil Code,* 2796, 2806. *Pothier on Obligations, vol.* 1. *p.* 148, *art.* 13, *sec.* 2.

10. But though there were no decisions on the subject, the reasons given for the solidarity of commercial partnership, would make this a commercial partnership. *Pothier. tom.* 2. *trait du contrat de soci. C.* 6, *N.* 96, *p.* 568. *Code of Nap.* 1682. *Favard Langlade Societé, c.* 3, *sec.* 1, *s.* 4.

11. If one of several co-obligors is sued, he may take advantage of the omission to charge the other, provided he plead in abatement, and give the plaintiff a better writ; but he cannot take advantage of it on the trial. *Jordan* vs. *Wilkins,* 3 *Wash. C. C. R.* 110.

EASTERN DIS.
*April,* 1834.
═══════
BEAL
*vs.*
M'KIERNAN.

12. 'This cause should not be remanded on account of the charge of the judge *a quo.  Miller* vs. *Pierce,* 3 *N. S.* 284. *Hewls* vs. *Barron,* 7 *N. S.* 134.    *Coote* vs. *Cottin,* 5 *La. Rep.*

*Hennen, contra.*

1. The charge of the judge on the facts, expressing his opinion in relation to them, and how far a partnership had been proved, &c. &c., was contrary to the *Code of Practice,* art. 516.

2. On the law, the charge of the judge was erroneous. First. The plaintiff, Beal, could not act in the double capacity of seller and purchaser of the cotton, though acting as consignee. 1 *Paley's Principal and Agent,* 32, 35. 1 *Hovenden on frauds,* 145, 148. 1 *Hovenden's Vesey,* 197. Note to case of *Massy* vs. *Davis,* 2 *Vesey, Jr.* 317.

3. The partnership between the defendant, M'Kiernan and M'Kinlay, was special not commercial. *A single act* of buying and selling, will not *constitute* the character of a merchant. 1 *Pardessus, p.* 100, *no.* 77, 78.  2 *Delvincourt, p.* 1, *note* 1, *and p.* 11, *note* 2.  Commercial copartnership defined, *La. Code, art.* 2796. There is no copartnership where different persons send out in a ship, articles to be disposed of by the captain, and the profits to be shared.

4. Beal could not purchase for the defendants the property entrusted to himself for sale, by the consignors of it, he being their trustee, agent, factor. 1 *Hovenden on Frauds,* 473, 475.

5. Interest was illegally and improperly allowed in the judgment, the debt being unliquidated.  *Code of Practice,* 553, 554.

MARTIN, J., delivered the opinion of the court.

The defendant and appellant has placed this case before us, principally on a bill of exceptions to the refusal of the first judge to instruct the jury, that a commission merchant having an order to purchase cotton, cannot apply thereto

EASTERN DIS.
*April*, 1834.

BEAL
*vs.*
M'KIERNAN.

cotton of his own, nor that of another consigned to him for sale, although he does so through the interference of a broker. Instead of which instruction, the judge told the jury, that by our law, as it now stands, all persons may buy and sell, except those who are prohibited by law. *Louisiana Code*, 2420 *et seq*. That no law in this state forbids an agent charged with the sale of property, to buy for a third person, on the contrary, the law contemplates a double agency. *Ibid*, 2985, 2989.

The counsel has introduced a considerable number of authorities, to establish the converse of the proposition of the Parish Court.

On the part of the plaintiff, the correctness and weight of these authorities have not been denied; it has been simply urged, that the principles of law, which the counsel for the appellant invokes, if they ever were inforce in this state, are absolutely abrogated by the part of our Code, to which the judge has referred the jury. It will, therefore, suffice, in the examination of the question in controversy, to ascertain what change our late Code has introduced in the pre-existing laws.

It is true, that under our Code, every person not prohibited by law, may buy and sell, so might any one before.

Our Code has preserved all the principles, which before its promulgation prevented a commission merchant, who had an order to purchase cotton, to apply his own cotton thereto.

*The Louisiana Code has preserved all the principles, which before its promulgation prevented a commission merchant who had an order to purchase cotton, to apply his own cotton thereto.*

A sale is a contract. *Ib*. 2413. A contract is an agreement, by which one person obligates himself to another. *Ib*. 1754.

An agreement, *aggregatio mentium*, one person bound to another, are of the essence of every contract, and, consequently, of every sale. Where there is but one person, there can be no agreement, no obligation; for there is not the concurrence of two minds, no one person bound to the other.

A sale is perfect as to the parties, as soon as there is an agreement on the object and the price; and the property is vested in the purchaser, although the object be not delivered nor the price paid. *Ibid*, 2431. Then the sale is not effected till there be an agreement.

A directs B to buy and ship cotton. B has cotton of his own, and determines to ship it. This creates no agreement nor obligation, no contract, no sale. There has not been the concurrence of two wills, and till then B is not bound, for he has it in his power to prevent the use of the obligation, if he change his mind. The faculty in the person bound to dissolve his obligation at pleasure, is incompatible with the existence of the obligation.

*A directs B to buy and ship cotton; B has cotton of his own, and determines to ship it. This creates no agreement, obligation, contract, or sale.*

If, according to our law as it now stands, a commission merchant having an order to buy cotton, cannot apply his own thereto, it is not because he cannot buy from any person not prohibited by law, but because he cannot buy except from another who agrees to sell; therefore, he cannot buy from himself.

The Parish Court, in our opinion, erred in declining to instruct the jury, in the mode requested by the defendant's counsel.

It is contended that the charge which he substituted, was equally erroneous.

The Parish Court's proposition is, that no law in this state forbids an agent charged to sell property, to buy it for a third person.

Every argument in favor of the charge requested, militates against that which was substituted.

*The agent, like the principal, may buy from any person not prohibited by law, but neither can buy from himself.*

The agent, like the principal, may indeed buy from any person (not prohibited by law), who may agree to sell, but neither can buy from himself. Every sale to have effect, must be attended with all the requisites of the law, among these is the agreement of *two* persons on the object and the price.

*A has an order from B to purchase cotton, and from C to sell his crop; he determines on selling C's cotton to B. The price has been determined by one person only; there is not that concurrence of two minds; aggregatio mentium is essential to the formation of the contract.*

A has an order from B to purchase cotton, and from C to sell his crop; he determines on selling C's cotton to B. The price has been determined by *one* person only; there is not that concurrence of two minds; *aggregatio mentium* is essential to the formation of the contract.

The Parish Court has believed, that its proposition can be supported by what our Code calls a double agency.

In the third chapter of the title of the *Contract of Mandate*, the *Code* professedly speaks of *the mandatary, or agent of both parties.*

This person is the broker or intermediary, who is employed to negociate a matter between two persons, and who, for that reason, is considered as the mandatary of both, 2985. They are not answerable, except in case of fraud, for the insolvency of those for whom they procure sales or loans, 2988.

They are not like commission merchants or bankers, to buy or sell, or to lend or borrow money, but simply, in the language of our *Code*, to *procure* sales or loans. They aver fidelity to both parties, and must favor neither more than the other, 2987.

They are not like the commission merchants, who *effect* sales and purchases; nor like bankers, who lend or place money. We have an example of this distinction in the present case. The plaintiff, as commission merchant, was employed by the defendant to *effect* a purchase, and he employed a broker to go in the market and *procure* a vendor.

Brokers are not like commission merchants to buy or sell, or to lend or borrow money, but simply to procure sales or loans. They negociate bargains, carry communications to and from the parties respectively, and they or their agents conclude the bargains.

The broker negociates the bargain, he carries communications to and from the parties respectively, and they or their agent, conclude the bargain.

The auctioneer, it is contended, is a double agent, and acts for both parties. That he is the agent of the vendor, cannot be denied, for it is in that capacity that he receives the last and highest bid. The sale is effected by the agreement of both parties, the assent of the owner to the proposition or offer of the bidder.

It is not only in a legal but also in a moral point of view, that the application of one's cotton, or that of others which he has to sell, to an order to purchase, is to be reprobated.

The person who gives the order, expects that in consideration of the commission with which he is charged, he has acquired a right to the faithful services of the commission merchant, whose best skill and industry are to be exerted in procuring a purchase at the lowest price in the market. If the latter uses his own cotton and place it at

the medium price, the commission is improperly charged, for it requires much less labor to fix this medium price than to search for the best article, seek such purchasers whose necessity to sell, may compel to accept the lowest price of the market; and suspicion will always exist, that the price which is charged by the owner, is not that which is the most advantageous to the purchaser.

*The commission merchant who undertakes to fill an order, with cotton which he has to sell, assumes inconsistent duties.*

The commission merchant who undertakes to fill an order with cotton, which he has to sell, assumes inconsistent duties. He has engaged to the planter to afford him the benefit of his utmost skill, experience and industry, in choosing a proper moment to sell, in selecting the safest vendee, and obtaining the very highest price. For all this he expects a pecuniary compensation. He next has a similar reward from another person; engages to the latter that he shall have the benefit of the same skill, experience and industry, to defeat the expectations of the planter; that is to say, to dispose of the cotton when the price is at the lowest ebb, and for the very lowest price in the market.

It is impossible that a commission merchant who has bound himself under such incompatible obligations, can do justice to either of the persons by whom he is employed. If he take the middle course, and dispose of the cotton, at the medium price of the market, he violates his engagement to both, for on the one side, he was to obtain the highest, and on the other pay the lowest price, and he pockets a double reward, where he has performed neither of his obligations.

We conclude that the Parish Court, in our opinion erred, in allowing the charge which was substituted to the one he was requested to give.

The plaintiff's counsel has insisted, that the evidence establishes that the defendant, after he had knowledge that cotton, which the plaintiff had to sell, had been used in filling his order, promised payment, thereby ratifying sale and precluding himself from contesting the plaintiff's claim; that the verdict is fully supported by the testimony, and ought not to be disturbed.

The defendant's counsel has contended that his client

prayed for a trial by jury, as he was entitled to demand it by law, and thereby acquired a right to a fair trial by his peers, uninfluenced by any erroneous expression of the law by the inferior court, that as juries ought to respect the opinion of the court on questions of law, their verdict was given in accordance thereto, and therefore, it is not probable they resorted to an examination of the plea of ratification, which the adverse counsel has no right to withdraw from the consideration of the jury, to submit it to that of the court, and he has therefore prayed us to remand the case for another new trial by jury.

The power to remand a case, whenever this court thinks justice requires it, is general in the law which organized it. We have often exercised it. We have not, however, thought that every mistake of the first judge, in cases in which a jury had been asked, required us to remand. We have reviewed all our decisions on this point. They are found in 4 *Martin* 316. 5 *id.* 213. 12 *id.* 355. 1 *id. N. S.* 629. 2 *id. N. S.* 3 *id. N. S.* 284. 4 *id. N. S.* 72. 5 *id. N. S.* 51. 7 *id. N. S.* 134. 8 *id.* 167, 172 and 257. 6 *id. N. S.* 603. 1 *Louisiana Reports*, 174. 2 *id.* 390. 3 *id.* 469. 5 *id.* 410.

None of the principles, which have guided us in these cases militates against the defendant in the present. It is most probable that, misled by the charge of the court, they did not attend to the plea of ratification, which if they respected the directions of the judge, was absolutely unimportant. Counsel should never avail themselves of the bustle and hurry of a *nisi prius* trial, and the confusion consequent thereto, to obtain from a court composed of a single judge, to whom much time is not given for consideration, an erroneous expression of the law to the jury.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled, avoided and reversed, the verdict set aside and the case remanded, with directions to the jury, that a commission merchant having an order to purchase cotton, cannot apply thereto, cotton of his

own, nor that of another consigned to him for sale, and to refrain from telling the jury that no law in this state forbids an agent charged with the sale of property, to buy it for a third person. And it is ordered that the appellee pay costs in this court.