The opinion of the court was delivered by
Marr, J.
Dr. Yolney Metcalfe, who resided at Natchez, in the State of Mississippi, owned a plantation, in the parish of Concordia, called ■“Rota Quinta.” He died in 1852, intestate, leaving a widow and six minor children. Mrs. Metcalfe qualified as natural tutrix of these children ; and one of them died shortly after. She kept the property in indivisión ; cultivated the plantation for the common benefit; and paid the debts of the succession out of the proceeds of the crops.
In 1867 Mrs. Metcalfe and her children, all of whom had either •attained their majority or had been emancipated, except James A. Metcalfe, executed a mortgage in favor of M. Gillis & Co., on the Rota Quinta plantation, to secure three promissory notes, two of them representing pre-existing indebtedness, the third being for a new loan. Mrs. Metcalfe acted in her own behalf, and as natural tutrix of James A. Metcalfe, in granting this mortgage; and the notes were indorsed by the oldest son, *390 Andrew W. Metcalfe, who about this time had the control and management of the plantation.
Two of these notes belonged to Charles E. Alter, who advanced the-money loaned in 1867. One of them was for $2500, the amount of the-new loan, payable in February, 1868 ; the other represented a previous loan of $2500, due in 1862, to which was added interest for five years at four per cent, making $3000, payable in February, 1869. On the 6th of' January, 1872, these two notes and interest remaining unpaid, Alter obtained judgment, by confession, against Mrs. Metcalfe and her children, with recognition of his mortgage rights, and a stay of execution to-February, 1873, on condition of the payment of the note for $2500 in February, 1872. A payment of $2119 67 was made in March, 1873 ; and on the 28th February, 1877, execution issued for the remainder of the-judgment. The sheriff seized the Rota Quinta plantation on the 2d of March, and advertised it for sale on the 7th of April. On the 6th April further proceedings were arrested by two injunctions, one at the suit of James A. Metcalfe, the other at the suit of Andrew W. Metcalfe, both filed on the same day.
These two suits must be considered separately ; but it may as well be stated here that community did not exist between Mrs. Metcalfe and her husband with respect to this plantation, because the matrimonial domicile was in the State of Mississippi; and all the land was acquired by Dr. Metcalfe before the passage of the act of 1852, which subjected future acquisitions of non-residents to the law of community. As six children survived their father, each child inherited from him one sixth ; and when one of them, John L. Metcalfe, died, his mother inherited from him one fourth of his undivided sixth, that is, one twenty-fourth of the-whole; and his three brothers and two sisters inherited, in equal portions, the remaining twenty-three twenty-fourths. This made Mrs. Metcalfe’s share five one hundred and twentieths, and the share of each one of her children twenty-thr.ee one hundred and twentieths of the-entire property and succession.
James A. Metcalfe alleges in his petition that he inherited from his father one undivided fifth ; that he was a minor at the time the notes-, and mortgage were given, and when the judgment was rendered ; that-the judgment was a nullity as to him ; and that, by a partition between-, all the heirs on the 23th February, 1877, the land described in the petition, part of the Rota Quinta plantation, became his separate property.. He prays that the judgment in favor of Alter be declared to be null and void so far as it relates to him : that an injunction begranted forbidding-the sale by the sheriff, and that Alter be condemned to pay him $250-damages.
The judgment of the district court decreed the judgment in favor- *391 of Alter to be null and void, as against plaintiff; and that the injunction be maintained to the extent of hip undivided fifth interest in the Rota Quinta plantation, “the court being of the opinion that the partition set up as between the heirs is void and without effect as to the defendant, Charles E. Alter.” Plaintiff appealed.
The formalities requisite, in order to bind the minor or his property were not observed by Mrs. Metcalfe; and the court correctly decreed the nullity of the judgment as to him. We think the court erred in maintaining the injunction to the extent of one fifth, because plaintiff really owned only twenty-three one hundred and twentieths. The difference is small; and defendant has not asked for an amendment, for that reason we presume.
The act of partition is a private writing. After stating the purpose to effect an amicable partition of the property of the succession of Yolney Metcalfe, deceased, consisting of the Rota Quinta plantation, a description of which by sections and subdivisions of sections is given, this writing proceeds:
“ The following agreement or act of partition is this day made and entered into by and between Andrew W. Metcalfe, here present and acting for himself, Amelia S. Metcalfe, Yolney Metcalfe, Matilda A. Metcalfe, and James A. Metcalfe, of the State of Texas, herein represented by their special agent, attorney in fact, and attorney at law, Wade R. Young, of the parish of Concordia, heirs of the deceased, and Mrs. Matilda Ann Metcalfe, of said State of Texas, herein represente 1 by her special agent and attorney in fact and attorney at law, the said Wade R. Young, the said Mrs. M. A. Metcalfe being the widow of the deceased : 1st. That said Mrs. M. A. Metcalfe specially renounces in favor of her children herein named, the heirs of the deceased, all right, title, and interest in and to any part, parcel, or portion of said plantation, and consents that there be a partition in kind amongst the five heirs, all of age, and herein present or represented: 2d. The parties heiein agree :
“ First. That sections 30 and 25 be divided into five parts or portions, by lines running from the north fine of said sections due south to the south boundary of the same, said parts or portions to be so laid off that each shall contain one hundred acres of clear or arable land, more or less, as may result from the division of the whole number of acres of arable into five parts, said parts or portions to begin at the northeast corner of section 30, and to be numbered from right to left, 1, 2, 3, 4, 5.
“ Second. That all the swamp or wild lands of said plantation lying south of said sections 30 and 25 shall be annexed to and form part of lot 1. '
*392 “ Third. That the west half of the northwest quarter, and the west half of the southwest quarter of section 9 shall be annexed to and form part of lot No. 2.
“Fourth. That section 24 shall be equally divided between lots 3, 4, 5, by lines run from the south line of said section due north, beginning at the southeast corner of said section, lot 1 of same to be annexed to lot 3, lot 2 to lot 4, and lot 3 to lot 5.
“ The foregoiDg tracts of land having been so subdivided into five parts, it is agreed,
“1st. That Yolney Metcalfe shall take lot 1.
“2d. That James A. Metcalfe shall take lot No. 2.
“3d. That Andrew W. Metcalfe shall take lot No. 3, if the dwelling-house be on said lot, and if not, then that one of the heirs to whom may be assigned the lot on which said dwelling-house stands shall exchange with the said Andrew W. Metcalfe.
“4th. That Amelia S. Metcalfe shall take lot No. 4.
“ 5th. • That Matilda A. Metcalfe shall take lot No. 5.
“ 6th. That the cabins or quarters, except those in the yard, shall be equally divided.
“ 7th. That the gin and cotton-house, with four acres of land adjacent thereto, shall remain undivided, and that the owners of each one of said lots shall have a right to use the same for the purposes for which they are intended, under the direction of Andrew W. Metcalfe, who will retain charge and control of same.
“8th. That the stable and corn-crib shall be taken down, and the lumber and material equally divided, to be used for the construction of other and smaller stables.
“ And the allotments having been so made and accepted, the said Mrs. Metcalfe conveys, and the said heirs mutually convey to each other, the parts so designated, with mutual covenants of warranty, to have and to hold the same for the use of them, their heirs, and assigns.
“Done and signed at Yidalia, parish of Concordia, State of Louisiana, February 28th, 1877.”
Signed by A. W. Metcalfe, and each of the other parties by Wade R. Young, attorney.
At the time of makiDg and signing this paper, Wade R. Young had not received the powers of attorney; but he says he knew they had been executed ; and they were delivered to him a few days after. There were two powers, duplicates, one by Miss Matilda A. Metcalfe, dated, Mason county, Kentucky, February 12,1877. There is no witness to either instrument ; and their respective dates are not otherwise shown than by the dates they bear.
The other power is as follows :
*393 “ State of Texas 1
“ Falls County j We hereby constitute and appoint, and by these presents do constitute and appoint, Wade R. Young, of the Parish of Concordia, and State of Louisiana, our special agent and attorney-in-fact, to represent us and our interest in the matter of the partition of a certain tract of land or cotton plantation, with all the buildings and improvements thereon and thereunto belonging,- known as the Rota Quinta plantation, being, lying, and situate in the said parish of Concordia, and State of Louisiana, on the east bank of the Tensas river, about six miles below the mouth of the Little Tensas, or Bayou L’Argent, and about twenty-two miles from the town of Yidalia. And we specially authorize and empower the said Wade R. Young to do for us and in our name all acts necessary to effect a partition of said plantation among the several persons having undivided interests therein. And we hereby ratify and confirm all the acts of our attorney done in the premises, as fully and completely as if done by ourselves present and in person.
“Done and signed this 15th day of February, 1877.
“(Signed) ■ M. A. METCALFE, Tutrix.
YALERY METCALFE.
A. S. METCALFE.
J. A.'METCALFE.”
Recurring now to the act of partition, it is manifest that the actual partition was not completed on the 28th February. Five lines were to be run through sections 25 and 30, not so as to divide them into five equal parts, but so as to give to each part one fifth of the whole number of acres of clear or arable land. Section 24 was to be divided into three equal parts ; and then it was to be ascertained on which of the lots the dwelling-house stands. The surveyor was absent; and after his return he subdivided the land, and made a map of it, which he filed in the recorder’s office. This map is dated March, 1877, without any mention of the day of the month; and there is nothing to show the precise date at which it was filed in the recorder’s office. It shows that the dwelling is not on lot 3, but on lot 2 ; and there is no proof of any exchange between James A. Metcalfe and Andrew W. Metcalfe. The act of partition, as it is called, is nothing more than an agreement as to how the partition should be made ; and before an actual partition could have been made, the formation of the lots in accordance with the agreement was indispensable.
It will be observed that Mrs. Metcalfe, who signed the power as tutrix, although her functions as such had terminated, gave no authority to her agent to renounce her rights and interest in the property. No such intention is expressed in the power ; nor can it be deduced from *394 the power, which was copied from a’form prepared by the agent, as he testified. Whatever the object may have been, whatever the effect may be, this renunciation was purely voluntary on the part of the agent; and was wholly unauthorized by the power.
It was not possible for one attorney or agent to represent five of the six proprietors in an act of partition, or in an agreement fixing the terms of the partition. A partition is an alienation, by each one of the co-proprietors, of his undivided share and interest in all the common property except that part which is allotted to him in the partition. Each one cedes, transfers, and conveys, to each and all the others, his right and interest in and to the parts and shares allotted to them, respectively, for and in consideration of the like cession, transfer, and conveyance, by each and all of them, to him, of their respective rights and interests in and to the part and share allotted to him. This operation constitutes as many distinct alienations and acquisitions, and requires as many concurring wills, as there are co proprietors, although the whole is embodied in a single act or writing ; and one person can no more represent the several co-proprietors in a partition than could one agent represent the vendor and vendee in a contract of sale.
Where a judicial partition is to be made among minors, their tutor, certainly presumed to be without prejudice or partiality, can not represent them. In such cases it is necessary to appoint a special tutor for each minor, to represent him alone. Succession of Aguillard, 13 An. 97; Hagan vs. Grimshaw, 15 An. 394. See, also, Beal vs. McKiernan, 6 La. 407.
Where the object of the partition is merely to ascertain and -set apart to all the minors the entire share and portion coming to them, without assigning and allotting to each his separate share, their tutor may well act for and represent them all; but where the shares of the minors are to be partitioned, so as to allot to each his separate share, each must be represented by a tutor, for the obvious reason that the interest of each necessarily conflicts with that of each and all the others: and this is equally true in every partition in kind.
Of course, where all the co-proprietors are sui juris they may make a voluntary partition; but the distinct consent of each to alienate in favor of, and to acquire from each and all the others, must be given; and this can not be done by an agent representing more than one of them. As Judge Martin said in Beal vs. McKiernan, 6 La. 415 :
“An agreement, aggregaiio mentium, one person bound to another, are of the essence of every contract, and, consequently, of every sale. Where there is but one person, there can be no agreement, no obligation; for there is not the concurrence of two minds, no one person bound to another.”
*395 The writing styled an act of partition, in this case, is a mere nullity on its face. It did not vest in any one of the co-proprietors a separate interest in the common property : it did not make any one of them the owner of any special or distinct part of the property : it is without effect or obligation as an agreement for any purpose ; the property remained in its entirety, in indivisión, at the time of the seizure ; and the right of Alter is perfect to have the interests of all the defendants in execution, except James A. Metcalfe, in and to the undivided property, the Rota Quinta plantation, sold in satisfaction of his judgment, subject to the-right of James A. Metcalfe, and the purchaser at that sale, to have their respective shares and portions ascertained and set apart by partition.
Where all the owners, or part of them, holding in indivisión, unite in a mortgage of the common property, a voluntary partition can not impair the rights of the mortgagee. If, therefore, there had been a complete and valid partition in this case, it would not have prevented the seizure and sale of the rights and interests of all the mortgagors in and to the entire Rota Quinta plantation, under the mortgage and judgment in favor of Alter. See Erwin vs. Orillion, 6 La. 214
We can not correct the slight error of the district judge, in favor of appellant, because the appellee has not asked for an amendment; and we do not think this a proper case for the infliction of damages as for a frivolous appeal.
The judgment appealed from is therefore affirmed at the costs of appellant.
Mr. Justice Spencer being recused takes no part in this decision.